**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2018
Decided November 26, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1108

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:06-cr-8 |
| REANNE S. TAYLOR, <br> *Defendant-Appellant.* | William M. Conley, <br> *Judge.* |

**O R D E R**

Reanne Taylor violated conditions of supervised release, and at her revocation hearing the district court sentenced her to 24 months' imprisonment. On appeal she argues that the district judge interrupted her lawyer repeatedly and, as a result, failed to consider her mitigating argument that she cooperated with law enforcement. The sentencing transcript belies Taylor's contention and shows that the district court did consider her mitigating argument. Accordingly, we affirm.

**I**

Taylor was indicted in 2006 for conspiring to distribute methamphetamine and for possessing it with the intent to distribute, 21 U.S.C. §§ 841(a)(1), 846. She pleaded guilty to the conspiracy charge, and the district judge sentenced her to 180 months' imprisonment and 5 years' supervised release. *United States v. Briesemeister*, 273 F. App'x 534, 536, 538 (7th Cir. 2008). This court affirmed that judgment. See *id*. at 536.

The district judge later reduced Taylor's sentence twice. The first time came in 2011, after Taylor cooperated with the United States Attorney's office for the District of Minnesota and helped them charge a former associate. At the government's request, the judge resentenced Taylor to 135 months' imprisonment. Then, in 2014, after Taylor had completed 75% of her sentence with good behavior, she moved for a reduced sentence under Amendment 782, a retroactive revision to the Sentencing Guidelines that lowered the base offense levels for most drug crimes. The district court granted her motion and reduced her sentence a second time.

Taylor served her supervised release term until she was arrested in Minnesota for check forgery in 2017. At her revocation hearing, the district court refrained from making specific findings about the Minnesota charge because Taylor's case was still pending, but the judge did find that Taylor had violated several other conditions of supervised release. Specifically, Taylor failed to notify the probation office within 72 hours of being arrested or questioned by law enforcement, left her residence without the approval of her probation officer, did not provide the probation office with a valid updated address, and failed to submit monthly supervision reports to her probation officer. The district court therefore revoked Taylor's supervised release and sentenced her to 6 months' imprisonment, to be followed by 24 months of supervised release.

Almost as soon as Taylor was back on supervised release, she violated yet again. She failed to participate in substance-abuse treatment or go to a residential treatment center as required. She also was arrested a second time in Minnesota, this time for falsely identifying herself to law enforcement.

At the ensuing revocation hearing, the district court noted the policy-statement range of 5 to 11 months' reimprisonment, as well as the statutory maximum sentence of 54 months. See USSG §§ 7B1.1(a)(3), 7B1.4; 18 U.S.C. § 3583(h). The government recommended a sentence within the range suggested by the Chapter 7 policy statements, with no supervision to follow because Taylor had demonstrated trouble with compliance and had rejected "multiple opportunities" to address her substance-

abuse problems. Defense counsel first argued that Taylor should not be held accountable for failing to go to the residential center because she was put on the wrong bus, sent to the wrong state, and did not know to whom she should report. And her failure to follow the conditions was merely a "totally immature decision."

Defense counsel then raised the mitigating argument at issue in this appeal—that Taylor contacted unspecified "law enforcement" in Minnesota and cooperated in the government's effort to indict other people engaged in drug activity. The district judge responded that because he was not going to consider the crimes Taylor committed in Minnesota as a mark against her, he likewise would not consider "some offsetting facts," such as the fact that she was cooperating. The judge continued, "I certainly strongly encourage [cooperation] … but it's not before me today." Next, the judge informed counsel that he would not credit her representation about Taylor's cooperation "in another case, until that comes to fruition" and he received corroboration "from someone." The judge asked defense counsel if she had anything further, and, after requesting revocation with time served, counsel confirmed that she had nothing more.

For her part, Taylor received an opportunity to make a statement to the district judge but she said that she did not "really have anything to say." She did offer that she was going to turn herself in, but "it just didn't happen."

The district court then imposed a sentence of 24 months, well above the range of 5 to 11 months under the applicable policy statements. The judge explained that the sentence was above the suggested reimprisonment range because it was Taylor's "second go-around" with violations of supervised release and he did not see that she had matured in her thoughts and actions. The court explained that the higher sentence would hold her accountable for her egregious noncompliance with conditions of release, including absconding. So, too, would the 24-month sentence promote respect for the law, deter her and like-minded others from similar conduct in the future, and protect the public.

## II

On appeal Taylor contends that the district court failed to consider her mitigating argument that she cooperated with and assisted law enforcement in Minnesota. She contends that not only did the district judge "repeatedly interrupt[] counsel's presentation of evidence," but also that the judge said that Taylor's "cooperation was not before him today and he would not consider it." The judge, she argues, violated the

Federal Rules by denying Taylor an "opportunity to make a statement and present any information in mitigation." FED. R. CRIM. P. 32.1(b)(2)(E).

But circuit courts have interpreted Rule 32.1(b)(2)(E) to mean only that district courts must allow defendants to allocute—not that they must consider mitigating arguments at revocation hearings. See, *e.g.*, *United States v. Thompson*, 599 F.3d 595, 599 (7th Cir. 2010); *United States v. Fleetwood*, 794 F.3d 1004, 1006 (8th Cir. 2015); *United States v. Daniels*, 760 F.3d 920, 924 (9th Cir. 2014); *United States v. Gonzalez*, 529 F.3d 94, 97 (2d Cir. 2008); *United States v. Carruth*, 528 F.3d 845, 846 (11th Cir. 2008). Indeed, the Advisory Committee explains that the purpose of Rule 32.1(b)(2)(E) is to "recognize[] the importance of allocution." FED. R. CRIM. P. 32.1(b)(2)(E) advisory committee's note to 2005 amendment. The district court afforded Taylor the opportunity to allocute, and she did not ask for leniency based on her cooperation, so she cannot rely on the Rule.

While this court has never explicitly said that district judges must consider mitigating arguments raised by defense counsel during revocation hearings, see *United States v. Williams*, 887 F.3d 326, 328 (7th Cir. 2018), it has done so as a matter of course. See, *e.g.*, *id.*; *United States v. Dill*, 799 F.3d 821, 824, 827 (7th Cir. 2015) (affirming district judge's rejection of defense counsel's mitigating argument at revocation hearing). In *Williams*, we stated that district judges should not predetermine the appropriate sentence because they must approach revocation hearings with an open mind and consider the evidence and arguments presented before imposing punishment. See 887 F.3d at 328 (quoting *United States v. Hollins*, 847 F.3d 535, 539 (7th Cir. 2017)). The court then analyzed defense counsel's contention that the district judge failed to consider his mitigating argument. See *id*.

We follow the path highlighted in *Williams* and consider Taylor's contention that the district court failed to consider her mitigating argument. Our doing so does not help Taylor. First, though the district judge did interrupt defense counsel, Taylor points to no authority for the proposition that a frustrated judge may not cut off an attorney who is making a weak argument, especially when there is no doubt that the judge understands the argument. Moreover, even with the interruptions, defense counsel made clear to the court that Taylor had contacted law enforcement, cooperated, and provided substantial assistance in another case. Taylor now asserts that "there was no evidence that the cooperation she provided was linked to the pending state court case," which we take to mean that she might not have had a selfish motive for cooperating. But Taylor, too, has no evidence either way, and she did not make that argument in the

district court. Indeed, the district judge asked defense counsel three times if there was anything that she wished to add, and counsel said no.

Second, though the judge said that Taylor's cooperation was "not a concern" of his, the transcript reveals that the judge *did* consider her mitigating argument before rejecting it. A district court "is not obliged to engage in a lengthy discussion of every argument for leniency that the defendant raises." *United States v. Patrick*, 707 F.3d 815, 818 (7th Cir. 2013). Here, the judge's explanation for rejecting Taylor's argument was sufficient. The judge stated that her alleged cooperation was outweighed by her other bad acts, principally absconding and failing to report to probation officers. Further, the judge explained that he did not feel comfortable giving her credit for cooperation because he had decided not to consider the aggravating fact that she had also committed crimes in Minnesota. The record, in short, does not support any view that the district court "passed over" Taylor's mitigating argument in silence. *United States v. Villegas-Miranda*, 579 F.3d 798, 802 (7th Cir. 2009). The district judge considered the argument but decided to reject it.

True, the judge also said that he would not further consider Taylor's argument because, other than counsel's representation, there was no evidence that Taylor had cooperated. Taylor asserts that this runs counter to 18 U.S.C. § 3661, which requires district judges to place "no limitation … on the information concerning the background, character, and conduct of a person." But there is a limit: a judge may consider information only if it has "sufficient indicia of reliability to support its probable accuracy." *United States v. Guajardo-Martinez*, 635 F.3d 1056, 1059–60 (7th Cir. 2011) (citation omitted). Defense counsel said that the government could confirm that Taylor contacted the authorities in Minnesota. Yet the government did not confirm that she did, let alone that she "gave substantial assistance," as Taylor claimed. Moreover, there is no evidence that defense counsel ever asked the government to obtain corroborating information before or after positing at the sentencing hearing that the prosecutor can confirm the cooperation. Counsel simply told the judge, without corroboration or detail, that Taylor was cooperating with unnamed officials in Minnesota during an unspecified time about an unidentified case. The district court did not ignore a "solid basis" to accept Taylor's argument for leniency. *Patrick*, 707 F.3d at 819.

On this record, we AFFIRM.